**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

FILED

DEC 15 2009

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

KATINA BOTTEN,

        Plaintiff,

v.                            ACTION NO. 4:09cv57

MICHAEL J. ASTRUE,
Commissioner of Social Security

        Defendant.

### UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The plaintiff, Katina Botten ("Botten"), brought this action under Section 216(i) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits ("DIB") under the Social Security Act (the "Act").

This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) by order of reference filed October 29, 2009. For the reasons expressed herein, the Court RECOMMENDS that the Comissioner's Decision be AFFIRMED/UPHELD.

### I. PROCEDURAL BACKGROUND

On March 31, 2006, Botten filed an application for DIB alleging an onset of disability as of December 31, 1995, due to

chronic interstitial cystitis of the bladder.[1]  (R.[2] at 109.)  The Social Security Administration initially denied Botten's application on August 31, 2006, and again on reconsideration on November 2, 2006. (R. at 14, 45-46.)

Botten requested a hearing before an Administrative Law Judge ("ALJ") of the Social Security Administration; the hearing was held on September 20, 2007.  (R. at 22-44, 55.)  At the hearing, Botten amended her disability onset date to June 28, 1998.[3]  (R. at 26-27.)  Botten testified at the hearing; she was represented by her attorney, Ms. Costa.  (R. at 22-44.)  A vocational expert, Edith Edwards, was also present at the hearing, but she did not testify. (R. at 22, 73-74.)

---

[1] Though Botten alleged in her disability application that irritable bowel syndrom ("IBS") limits her ability to work, there is no indication in the record that Botten pursued disability benefits for this disorder. (R. at 109.) Additionally, Botten's initial disability determination indicates she alleged disability due to petechiae.  (R. at 45.)  Again, the record does not reflect that Botten pursued disability benefits for this diagnosis. Rather, despite the fact that Botten stated in her application, "I have obsessive compulsive disorder that I take medication for and that condition does not affect my ability to work" (R. at 116), the parties agree that Botten has stated claims that she is disabled due to obsessive compulsive disorder ("OCD"), in addition to interstitial cystitis.  (Pl.'s Br. 2; Def.'s Br. 2 n.1.)

[2] "R." refers to the transcript of the administrative record of proceedings relating to this case.

[3] Botten previously filed for disability benefits and was denied initially, on reconsideration, and in a decision issued by an ALJ on June 27, 1998.  (R. at 14, 26-27.)  Accordingly, Botten amended her disability onset date to the day after the final decision in her previous case.

2

On November 19, 2007, the ALJ issued a decision.  (R. at 11-20.)  The ALJ found that Botten was not entitled to DIB because she was not disabled within the meaning of the Act at any time on or before December 31, 2001, the date on which Botten was last insured for disability benefits.  (R. at 16, 20.)  Specifically, the ALJ found that Botten did not have any impairments that significantly limited her ability to perform basic work-related activities on or before December 31, 2001.  (R. at 20.)

On December 20, 2007, Botten requested review of the ALJ's decision by the Appeals Council of the Social Security Administration's Office of Hearings and Appeals ("Appeals Council").  (R. at 9-10.)  The Appeals Council denied review on March 25, 2009. (R. at 1-6.)  Therefore, the ALJ's decision is the "final decision" of the Commissioner subject to judicial review pursuant to 42 U.S.C. § 405(g).  See 20 C.F.R. § 404.981.

Botten filed a complaint seeking judicial review of the decision of the Commissioner denying her claim for disability insurance benefits on May 22, 2009.  The defendant filed an answer on August 6, 2009.  Botten filed a motion for summary judgment with a memorandum in support on September 11, 2009.  The defendant filed a motion for summary judgment and in opposition to Botten's motion for summary judgment with a memorandum in support on October 13, 2009.  Botten did not file a response to the defendant's motion. Neither party  has indicated special circumstances requiring oral

3

argument in this matter; therefore, the case is deemed submitted for decision based on the memoranda.

## II. FACTUAL BACKGROUND

Botten is a forty-eight (48) year old woman. (R. at 105.) She has completed three and a half years of college, at least some of which was completed from January 1998 to May 2005. (R. at 28.) During this time, she worked briefly as a hotel reservationist, as a receptionist for a dermatologist, and as a registration clerk. (R. at 29-31.) She previously was in the Navy from 1981 to 1991 doing telecommunications, and has held various other jobs.[4] (R. at 32-34, 118-122, 133-40.)

## III. STANDARD FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For the evidence to present a "genuine" issue of material fact, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Facts are deemed material if they might affect the outcome of the case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-27 (1986). In other words, the moving party's submission must

---

[4] Because Botten's work history is not relevant to the Court's review, the Court does not find it necessary to discuss her previous employment in detail.

4

foreclose the possibility of the existence of facts from which it would be open to a jury to make inferences favorable to the non-movant.  Id.

In deciding a summary judgment motion, the Court must "view[] the record as a whole in the light most favorable to the non-movant." Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985). If "the evidence . . . is so one-sided that one party must prevail as a matter of law," the Court should grant summary judgment in that party's favor. Anderson, 477 U.S. at 251-52. Moreover, summary judgment must be granted where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," Celotex, 477 U.S. at 322, as the non-moving party is required to "set out specific facts showing a genuine issue for trial" with respect to that element. Fed. R. Civ. P. 56(e)(2).

When confronted with cross-motions for summary judgment, "the standards upon which the Court evaluates the motions for summary judgment do not change." Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991). "[T]he court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997)).

## IV. <u>STANDARD FOR REVIEW OF THE COMMISSIONER'S DETERMINATION</u>

Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow.  <u>Smith v. Schweiker</u>, 795 F.2d 343, 345 (4th Cir. 1986).  This Court's review of that decision is limited to determining whether there is substantial evidence in the administrative record to support the Commissioner's decision.  42 U.S.C. § 405(g); <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam), <u>superceded in non-relevant part by</u> 20 C.F.R.  §§ 404.1517(d)(2), 416.927(d)(2); <u>Hays v. Sullivan</u>, 907 F.2d 1453 (4th Cir. 1990).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Hunter</u>, 993 F.2d at 34 (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)).  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  <u>Id.</u> (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner has the duty to make findings of fact and resolve conflicts in the evidence.  <u>Hays</u>, 907 F.2d at 1453 (citing <u>King v. Califano</u>, 599 F.2d 597, 599 (4th Cir. 1979)).  The Court does not conduct a <u>de novo</u> review of the evidence or of the Commissioner's findings.  <u>Schweiker</u>, 795 F.2d at 345.  In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner.  <u>Craig v.</u>

6

_Chater_, 76 F.3d 585, 589 (4th Cir. 1996) (citing _Hays_, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or on the Commissioner's designate, the ALJ)." _Id._ at 589 (quoting _Walker v. Bowen_, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. _Richardson_, 402 U.S. at 401. The issue before this Court, therefore, is not whether Botten is disabled, but whether the Commissioner's finding that Botten is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. _See id._; _Coffman v. Bowen_, 829 F.2d 514, 517 (4th Cir. 1987) ("[A] factual finding by an [ALJ] . . . is not binding if it was reached by means of an improper standard or misapplication of law.").

## V. ANALYSIS

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[5] which can be expected to result in death or which has lasted or can be

---

[5] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

expected to last for a continuous period of not less than 12 months.  20 C.F.R. § 404.1505(a); <u>see also</u> 42 U.S.C. § 423(d)(1)(A).  To meet this definition, the claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity[6] that exists in the national economy.  20 C.F.R. § 404.1505(a); <u>see also</u> 42 U.S.C. § 423(d)(2)(A).

Moreover, to be entitled to receive DIB, the claimant must be insured for disability benefits at the time she becomes disabled.[7] 42 U.S.C. § 423(a)(1)(A); <u>see also</u> 42 U.S.C. § 423(c)(1); 20 C.F.R. §§ 404.130, 404.315(a)(1).  Once the claimant's insured status ends, the claimant is no longer eligible for benefits for a disability arising thereafter. <u>Henley v. Comm'r</u>, 58 F.3d 210, 213 (6th Cir. 1995); <u>Boles v. Celebrezze</u>, 210 F. Supp. 856 (W.D. Va. 1962).  Botten met the insured status requirement only through December 31, 2001.  (R. at 16.)  Consequently, to be entitled to DIB, she was required to establish the onset of a disability prior to that date.

---

[6] "Substantial gainful activity means work that (1) Involves doing significant and productive physical or mental duties; and (2) Is done (or intended) for pay or profit." 20 C.F.R. §§ 404.1510, 416.910.

[7] The Court notes that insured status is not a prerequisite for receipt of supplemental security income benefits.  <u>See</u> 20 C.F.R. § 416.202; <u>Henley v. Comm'r</u>, 58 F.3d 210, 212 n.4 (6th Cir. 1995).  In this action, however, the plaintiff seeks only disability insurance benefits.

## A. Sequential Disability Analysis

In determining whether a particular claimant is disabled, the Commissioner follows a five-step sequential analysis, which is set forth at 20 C.F.R. § 404.1520. See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981). Under this process, the ALJ must determine in sequence:

(1) Whether the claimant is engaged in substantial gainful activity (i.e., whether the claimant is working). If so, the claimant is not disabled, and the inquiry is halted.

(2) Whether the claimant has a severe impairment. If not, the claimant is not disabled, and the inquiry is halted.

(3) Whether the impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant is disabled, and the inquiry is halted.

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled, and the inquiry is halted.

(5) Whether the claimant is able to perform any other work considering both her residual functional capacity[8] and

---

[8] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his impairment and any related symptoms. See 20 C.F.R.

her vocational abilities. If so, the claimant is not disabled.

In this case, the ALJ reached the second step of the sequence, at which point he determined that Botten was not disabled. The ALJ first determined in step one that Botten had not engaged in substantial gainful employment since the alleged disability onset date through her date last insured, despite her earnings posted in 2000, 2001 and 2005.[9] (R. at 16.)

In step two, the ALJ found that while Botten had medically determinable impairments, namely OCD and interstitial cystitis, these impairments were not severe within the meaning of the regulations. (R. at 16-17.) The combination of impairments did not "significantly limit[] [Botten's] ability to perform basic work-related activities for 12 consecutive months; therefore, [Botten] did not have a severe impairment or combination of impairments." (R. at 17.)(citation omitted) In reaching this conclusion, the ALJ considered medical records from the Botten's treatment at the Veterans Administration Medical Center ("VAMC") in Hampton, Virginia. (R. at 19-20.) The ALJ also considered Botten's testimony and written statements. (R. 18-19.) Because

_____

§ 404.1545(a)(1).

[9] Though Botten did earn $4,713.84 in 2000, $1,293.42 in 2001, and $1,160.84 in 2005, the ALJ concluded that Botten's earnings in 2001 and 2005 did not reflect substantial gainful activity, and her earnings in 2000 reflected an unsuccessful work attempt. (R. at 16.)

the ALJ found that Botten did not have a severe impairment that interfered with her ability to perform work-related activities for twelve consecutive months on or before the expiration date of her disability insured status, the disability inquiry was halted at step two of the sequential analysis. <u>See</u> 20 C.F.R. § 404.1520(a)(4).

Botten alleges that the ALJ's decision is not supported by substantial evidence because the "Step 2 severity standard is a <u>de minimis</u> standard. . . . The medical evidence and Ms. Botten's testimony concerning her conditions prior to the date last insured of December 31, 2001, are sufficient to establish the presence of and chronic symptoms and limitations from interstitial cystitis and obsessive compulsive disorder." (Pl.'s Br. 8.) Moreover, Botten argues that it is ambiguous whether the ALJ actually found that Botten had a severe impairment. (Pl.'s Br. 6-7.)

## B. <u>Severity of Plaintiff's Impairment(s)</u>

The second step of the sequential analysis requires that the claimant have a medically determinable impairment or combination of impairments that is severe and has lasted or is expected to last for a continuous period of twelve months or more. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). An impairment cannot be established by the claimant's statement of symptoms alone, but must be demonstrated "by medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. § 404.1508; <u>see also</u> 42 U.S.C.

11

§ 423(d)(5)(A).   It is the claimant who bears the burden of demonstrating a medically severe impairment or combination of impairments.   See Bowen v. Yuckert, 482 U.S. 137, 146 (1987) (citing 42 U.S.C. § 423(d)(5)(A), which provides that a claimant "shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof . . . .").

An impairment is severe within the meaning of the Social Security regulations if it imposes significant limitations on the claimant's ability to perform basic work activities.   20 C.F.R. § 404.1521(a).   In contrast, an impairment is not severe if it "has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1982).   Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs," which include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).   In assessing the functionally limiting effects of a claimant's impairment or combination of impairments, the ALJ must consider any "symptom-related limitations" --

12

restrictions caused by symptoms, such as pain, fatigue, or weakness -- provided that the claimant has "a medically determinable impairment(s) that could reasonably be expected to produce the symptoms." Soc. Sec. Ruling 96-3p. Nonetheless, when the medical evidence shows that the claimant is capable of performing basic work activities, the severity requirement cannot be satisfied. Soc. Sec. Ruling 85-28.

In this case, the ALJ reviewed Botten's medical history since her alleged onset date of June 28, 1998, through her date last insured of December 31, 2001. (R. at 16, 18-20.) Ultimately, the ALJ found that "[w]hile the claimant may have experienced some fatigue caused by periods of work in addition to school . . . , [s]he was treated appropriately with significant improvement in her symptoms. She remained successful in her school work and graduated with honors." (R. at 19.) The ALJ found "no evidence of a condition that limited her ability to perform basic work-related activities for 12 consecutive months . . . ." Id. The Court has reviewed the entire administrative record, and finds that the ALJ correctly applied the applicable law in making this determination, and the ALJ's determination that Botten did not suffer from a severe impairment or combination of impairments on or before December 31, 2001, is supported by substantial evidence.

**1. The ALJ's Finding that Botten Did Not Have a Severe Impairment or Combination of Impairments Was Not Ambiguous.**

As a preliminary matter, the ALJ's finding that Botten did not

have a severe impairment or combination of impairments was not ambiguous. The ALJ found that Botten had two medically determinable impairments through the date last insured, namely OCD and interstitial cystitis. (R. at 16-17.) However, the ALJ determined that these ailments did not limit Botten's ability to perform basic work-related activities for twelve consecutive months. Id. A medically determinable impairment is not necessarily severe, and where such impairments do not interfere with a claimant's ability to work, the ALJ should find the impairments non-severe.[10] 20 C.F.R. § 404.1521(a); See Evans, 734 F.2d at 1014. Here, once the ALJ determined that Botten's impairments did not interfere with her ability to work, the ALJ correctly concluded that Botten did not have a severe impairment or combination of impairments.[11]

---

[10] Botten seems to confuse the term "medically determinable impairment" with "severe impairment." In her brief, Botten cites the ALJ's finding that her OCD and interstitial cystitis were medically determinable impairments and then states, "[t]herefore, the ALJ made a Finding of Fact that Ms. Botten has severe impairments at Step 2 of the sequential evaluation." (Pl.'s Br. 6.) As noted, supra, these terms are not used synonymously in the regulations, and a medically determinable impairment is not necessarily severe.

[11] Additionally, once the ALJ determined that Botten had a medically determinable mental impairment, he correctly considered the "four broad functional areas set out in the disability regulations for evaluating mental disorders." (R. at 19-20); see 20 C.F.R. § 404.1520a(c).

## 2. The ALJ's Determination that Botten Did Not Suffer from a Severe Impairment or Combination of Impairments on or Before December 31, 2001, is Supported by Substantial Evidence

Botten was diagnosed with chronic interstitial cystitis after she underwent a cystoscopy, hydrodistention, and bladder biopsy on January 16, 1997. (R. at 1045.) Botten testified that prior to December 2001, her interstitial cystitis caused her to need to urinate frequently and interfered with her concentration. (R. at 36.) She also testified that at times she had pain "so bad that it would hurt to walk." (R. at 37.) She testified that she "would be dripping blood in the toilet, and this would go on for three, four months, and it hurt. It burned every time [she] went to the bathroom." Id. She also stated that she currently experiences "a very mild burning sensation" when she goes to the bathroom, she has good and bad days, and on a bad day, she uses the bathroom every ten minutes and cannot watch a half an hour television program. (R. at 37-38.)

Botten's medical records from the VAMC indicate that her interstitial cystitis was treated with medication. On June 20, 1997, Botten's urologist, Dr. Young B. Kwon, noted that Botten had botox injections in her bladder with improvement for six months, but with recurrent pain and frequency. (R. at 902.) However, Botten had been on darifenacin, which improved her bladder pain and urge incontinence. Id. Botten's records reflect that she no longer took darifenacin in October 2000 (R. at 425), but in January

15

2002 she was taking tolterodine twice a day (R. at 397). In August
2002, Dr. I.C. Vernon Netto noted that Botten was "being managed on
tolterodine for relief of frequency. Other therapies were tried in
the past. She seems satisfied with effect of tolterodine." (R. at
395.) Botten's records indicate that she continued on tolterodine
through September 1, 2004 (R. at 141), and that she had been
"relatively asymptomatic" and "wel[l] mana[g]ed" on tolterodone (R.
at 334).[12] On March 31, 2006, Botten reported that she had not had
a bladder flare-up since January 1997. (R. at 110.)

With regard to Botten's mental health, Botten testified that
she currently suffers from OCD, as well as bipolar disorder. (R.
at 35-40.) Botten was not diagnosed with bipolar until 2006, but
alleged that she had symptoms prior to the diagnosis that affected
her ability to maintain employment. (R. at 35.) She stated at the
hearing on September 20, 2007, that she no longer experienced the
mood symptoms of her bipolar disorder, namely "real low" lows and

---

[12] The medical records indicate that Botten did complain of
increased frequency and wanted to try additional treatment on
August 3, 2004. (R. at 334.) She had a bladder procedure on March
17, 2005 (R. at 848); she then went on trospium chloride, which
gave her "more symptomatic relief from the frequency than any
previous treatment," but also a rash (R. at 543); she then returned
to tolterodine, id.; in August 2006, Botten's medical records
indicate that she returned to trospium chloride (R. at 208), though
she reported taking Detrol (tolterodine) to Disability
Determination Services ("DDS") examiner Renee Gibson (R. at 191).
While these changes in medication indicate Botten's interstitial
cystitis may not have been controlled as successfully by medication
in more recent years, the period relevant to the Court's analysis
ends December 31, 2001.

"high" highs, because her disorder was controlled by medication.
Id.

Dr. James O. Van Bavel prescribed Zoloft in April 1998 for
Botten's anxiety.  (R. at 834.)  On July 29, 1998, Botten reported
to Shirley J. Bacote, MSW, that the medication from Dr. Van Bavel
helped her feel less anxious, and "that she's doing good in
everyday living skills." (R. at 835.)  In September 1998, Botten
reported that since taking Zoloft, she felt calmer and less
irritable, and she was "not as worried about things." (R. at 423.)
Dr. Van Bavel noted at that time that her OCD symptoms had not
changed.  Id.

On December 8, 1998, Botten again reported to Dr. Van Bavel
that the Zoloft was "very helpful." (R. at 422.)  She stated that
she felt more relaxed and focused, and she did not list OCD as a
health concern for her at that time.  Id.  In May 1999, Botten
reported that Zoloft was "definitely" helpful for her irritability
and OCD symptoms and even her mother noticed a difference, though
she stated that she still had perfectionist tendencies and easily
got anxious and frazzled.  (R. at 421-22.)  Botten stated that she
wanted to be on Zoloft "for the rest of [her] life." (R. at 422.)
In November 1999, Botten stated that the Zoloft continued to help
her OCD symptoms, but she still had residual checking rituals,
irrational worries and ruminations.  (R. at 421.)  Dr. Van Bavel
increased Botten's prescription dosage for Zoloft, however, he also

noted that Botten continued to do well in school.  Id.

On February 11, 2000, Botten stated that she noticed some "calming effect" from the increase in Zoloft dosage, but no change in her OCD symptoms.  (R. at 420-21.)  She stated that she wasted three hours a day on rituals and compulsive behaviors, and though she regarded the behaviors as pointless, if she were prevented from doing them, she would become hysterical.  Id.

Botten increased her dosage of Zoloft again in March 2000, and she reported sleeping well and experiencing a "further" decrease in her compulsive behaviors.  (R. at 420.)  She reported having an easier time setting limits for herself in regards to her compulsive behaviors, and she reported that she was doing very well academically.  Id.  In July 2000, Botten reported good control of her compulsive behaviors, school was going well, and she was sleeping soundly.  (R. at 400.)

Botten's medical records indicate that she remained on Zoloft through 2006 with continued success in controlling her OCD.  In August 2002, she reported minimal ritualistic behavior that hardly interfered with her social and occupational functioning.  (R. at 804.)  In November 2002, she reported that Zoloft continued to help her OCD symptoms, and in September 2004, she reported good control of her compulsive behaviors.  (R. at 324, 380.)  In August 2005, Dr. Van Bavel wrote that Botten "continue[d] to do fairly well on Zoloft," and she reported "generally good control of compulsive

18

behaviors." (R. at 287.)   In May 2006, Botten reported increased OCD behaviors (R. at 225-26), but in June 2006 she reported that her OCD symptoms had improved "markedly" (R. at 218).

Based on its review of the whole administrative record, the Court concurs with the ALJ's finding that Botten did not suffer from any impairment or combination of impairments which significantly limited her ability to perform basic work activities on or before December 31, 2001.   Botten is able to live alone, clean and do laundry, take care of her pets, cook her own meals, shop, attend church, keep in telephone and e-mail contact with friends and family, and generally maintain her independence.   (R. at 125-29.)   Moreover, Botten was able to attend school from January 1998 to May 2005, and she reported graduating with honors to her doctor.   (R. at 226.)   Although the evidence suggests that Botten suffered from some symptoms caused by OCD and chronic interstitial cystitis during the period of June 1998 through December 2001, overall these conditions were controlled by medication, and Botten retained the ability to perform basic work activities.   See 20 C.F.R. § 404.1521(a).

## C. Conclusion

The ALJ's determination that Botten did not suffer from a severe medical impairment or combination of impairments prior to the expiration of her disability insured status on December 31, 2001, is supported by substantial evidence and was based on a

correct application of the relevant law.

## V. **RECOMMENDATION**

For the foregoing reasons, the Court recommends that the final decision of the Commissioner be UPHELD, that the defendant's Motion for Summary Judgment be GRANTED, and that the plaintiff's Motion for Summary Judgment be DENIED. Accordingly, the Court recommends that the case be DISMISSED.

## VI. **REVIEW PROCEDURE**

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules. A party may respond to another party's specific objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will

20

result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

United States Magistrate Judge

Norfolk, Virginia

December,15 2009

21

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to the following:

Blythe A. Scott, Esq.
Rutter Mills, LLP
160 W. Brambleton Ave.
Norfolk, Virginia 23510
Counsel for Plaintiff

Lawrence R. Leonard, Esq.
Managing Assistant United States Attorney
Office of the United States Attorney
World Trade Center
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510
Counsel for Defendant

Fernando Galindo,
Clerk of Court

By:  _____
     Deputy Clerk

     December *15*, 2009

22